IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2022

**STATE OF TENNESSEE v. KADREAN J. BREWSTER**

**Appeal from the Criminal Court for Knox County**
**No. 109156    Kyle A. Hixson, Criminal Court Judge**

————————————————————

**No. E2021-00793-CCA-R3-CD**

————————————————————

Defendant, Kadrean J. Brewster, pled guilty to possession with the intent to sell more than 0.5 grams of cocaine.  He was sentenced to eight-years split between one year in confinement and the remainder of the sentence on probation.  Following revocation hearings, Defendant's probation was revoked and Defendant was ordered to serve the balance of his sentence in confinement.  On appeal, Defendant contends the trial court abused its discretion in revoking his probation and ordering him to serve the sentence in confinement.  Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JOHN W. CAMPBELL, SR., JJ., joined.

Richard C. Stooksbury III, Knoxville, Tennessee, for the appellant, Kadrean J. Brewster.

Herbert H. Slatery III, Attorney General and Reporter; Holli M. Hagemeyer, Assistant Attorney General; Charme P. Allen, District Attorney General; and Jordan Murray, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On October 19, 2016, a Knox County Grand Jury returned a true bill charging Defendant with two counts of possession with the intent to sell more than 0.5 grams  of cocaine within one-thousand feet of a drug-free zone (counts one and three), two counts of

possession with the intent to deliver 0.5 grams or more of cocaine within a one-thousand feet of a drug-free zone (counts two and four), felony evading arrest (count five), and unlawful possession of amphetamine (count six). On August 4, 2017, Defendant pled guilty to a reduced charge in count one of the indictment, possession with the intent to sell more than 0.5 grams of cocaine, without the school zone enhancement, a Class B felony. The judgment of conviction was entered on September 22, 2017, reflecting a Range I, eight-year sentence in split confinement. Defendant was ordered to serve twelve months at seventy-five percent release in the Knox County Detention Facility and the remainder of his sentence was suspended to supervised probation. The remaining five counts of the indictment were dismissed under the plea agreement. Defendant was referred to the Knox County Detention Facility's Intensive Treatment Program for an evaluation. If accepted, Defendant was to enroll in the program until successfully completed.

Defendant's first violation of probation warrant was issued less than two years after the original sentencing hearing. The probation revocation warrant and later amended warrant alleged that Defendant was arrested for theft and failed to report the arrest; that he tested positive for amphetamine and methamphetamine; that he admitted to using heroin; that he tested positive for marijuana and admitted to using marijuana; and that he had failed to pay supervisory fees, courts costs, and fines. After a hearing, Defendant's probation was revoked and he was ordered to complete rehabilitation at CenterPointe. Upon completion of the program, his probation was restarted with an effective end date of July 18, 2027.

On July 24, 2020, a violation of probation warrant was issued alleging that Defendant had violated five rules of probation. Responding to a call regarding a non-fatal overdose, officers found Defendant unconscious in his bathroom. He was taken to the Fort Loudon Medical Center for treatment where he admitted to Drug Task Force Agent Marty Stanley that he passed out from snorting heroin. Defendant was also behind in making payment on his court fines and supervision fees (Rule 19).

Defendant was appointed counsel on August 25, 2020, and was released on his own recognizance on September 17, 2020, "conditioned upon him continuing to report to Cherokee Health and Helen Ross McNabb." The case was then continued to October 1, 2020. The record shows that a capias was issued for Defendant's arrest on October 28, 2020, but it was set aside the next day on payment of costs. The case was continued to December 3, 2020.

According to the record, no further activity occurred in the case until February 19, 2021, when an order was entered amending the violation of probation warrant to include a new charge for aggravated domestic assault in Roane County. On January 23, 2021, Defendant was charged with assaulting the victim by choking her, dragging her by her hair,

throwing her on the ground, and kicking her in the ribs.  The victim managed to get a ride to the hospital.  The victim gave a written statement about the assault.  Attached to the statement were photographs of the victim's injuries.  Defendant was arrested two days later and released the same day.  He did not report this arrest to his probation officer

At the revocation hearing on May 5, 2021, defense counsel advised the trial court that Defendant wished to waive the revocation hearing, submit to being in violation of his probation, and asked the court to be referred to "Enhanced Probation, the Day Reporting Center, and Samantha Monday."  The State did not oppose Defendant's submission to the violations but abstained from taking a position on further placement pending a report on Defendant's qualification into the programs.

Under oath, Defendant testified that by submitting to the violations, he understood that he was waiving the right to a hearing on the allegations in the warrants and "forc[ing] the State to call witnesses and prove . . . that [he] actually violated the terms of [his] probation."  After being advised of his rights by the trial court, Defendant voluntarily waived an evidentiary hearing and submitted to the allegations in the violation of probation warrant as amended.  Based on Defendant's waiver of rights and submission to the violations, the trial court found Defendant in violation of his probation but reserved judgment on the consequence of the revocation:

> [B]ased upon your waiver of rights and submission, I find that you have violated the terms of your probation, but I'm going to reserve judgment on your case, refer you to Enhanced probation, to DRC, and I'm also going to ask Ms. Monday if she would work with you as well.

The trial court estimated that "45 days" was needed to "make those referrals" and set the second hearing for June 25, 2021.

On July 1, 2021, a hearing was held to determine the consequence of the probation revocation.  Defense counsel informed the trial court on the status of the referrals:

> As of this date, Enhanced [probation] has not seen [Defendant].  Some of that was because of the tight turn around.  I couldn't be here to take this up last Friday.  I was going to be in Anderson County, so I asked the Court to set it for today.

And so Enhanced – Ms. Mooneyham[1] said she might be able to see him. She wasn't able to. But DRC has given a report that said they are willing to take [Defendant] if he has a halfway house. He does have a bed date at the Integrity House on . . . July 6th, on Tuesday. I am asking the Court today to place him on DRC and allow him to be transported on Tuesday to Integrity House.

The State opposed further placement on probation based on the nature of the violations and Defendant's repeated failure to abide by the conditions of release despite repeated opportunities for treatment and rehabilitation:

I think it's important for Your Honor to know is that it seems that through the history of this case, looking at my file, seems that there's been multiple opportunities to try and provide [Defendant] with treatment. Seems that inpatient treatment was attempted. It seems that Vivitrol was contemplated at some point in time. From my understanding is that [Defendant] – that that just didn't happen, Judge.

The State's position is that he's been given multiple opportunities at this point time. The sentence, again, the original sentencing dates back to September of 2017 on an eight-year sentence. Judge, the State just believes that he's been given multiple opportunities at this point in time and continues to violate. We believe that a Department of Correction sentence is appropriate at this point in time

At the conclusion of the hearing, the trial court recounted Defendant's history of supervision since he entered his guilty plea on August 4, 2017:

[Defendant] was placed on an eight-year probation back on September 22, 2017. There was a probation revocation proceeding that took place in 2019 where [Defendant]'s probation was revoked, but the sentence was restarted.

Shortly thereafter – that happened on July 19th of 2019 – not shortly thereafter, it was a year. It was a year after that. And July of 2020 the current VOP (violation of probation) warrant was filed. We ROR'd (released on his own recognizance) [Defendant] in September. He was ordered to report to Cherokee and Helen Ross McNabb.

---

[1] It is unclear from the record whether this is the same person identified as "Samantha Monday" at the May 5, 2021 hearing.

A capias was issued in October, but it was set aside the very next day, and then the VOP was amended in February to reflect the new charge in Roane County. And [Defendant], as we stated, has submitted to being in violation including the amendment.

The trial court also reviewed the facts underlying the aggravated domestic assault in Roane County, found that Defendant had violated the terms of his probation as set forth in the VOP warrant as amended, and ordered Defendant to serve the balance of the sentence in the Tennessee Department of Correction.

From this judgment, Defendant now appeals.

## Analysis

On appeal, Defendant contends the trial court abused its discretion by ordering him to serve his sentence in confinement instead of on intensive probation through the DRC, or some other alternative sentence because the latter is the least severe measure necessary to achieve the purpose and principles of sentencing. The State contends the trial court properly exercised its discretion because Defendant had shown himself to be "a poor prospect for any measure less restrictive than confinement" due to his repeated probation violations. We agree with the State.

Trial courts possess the authority to revoke probation upon finding by a preponderance of the evidence that a defendant has violated the conditions of probation. *See* T.C.A. §§ 40-35-310(a), -311(e)(1) (2021).[2] Upon finding that a defendant has violated probation, the trial court may: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c)(1), (2); -310; -311(e)(1), (2) (2021).

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation

_____

[2] Multiple changes were made to both statutory sections effective July 1, 2021, the same date of the entry of the revocation order. *See* Tenn. Code Ann. §§ 40-35-310 to -311 (2021). Those changes do not affect the issues before the court.

and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). When the trial court fails to place its reasons on the record, the reviewing court may either conduct a de novo review if the record is sufficiently developed for the court to do so, or remand the case to the trial court to make findings. *Id.* (citing *State v. King,* 432 S.W.3d 316, 327-28 (Tenn. 2014)); *see also State v. Arthur M. Stewart,* No. M2021-00595-CCA-R3-CD, 2022 WL 1236982, at *3 (Tenn. Crim. App. Apr. 27, 2022) *no perm. app. filed*.

Probation revocation requires a two-step consideration by the trial court. First, the trial court determines whether a preponderance of the evidence exists to revoke a defendant's probation. *Dagnan,* 641S.W.3d at 757, n.4. Should the trial court find that a defendant has violated his probation, the trial court then determines the appropriate consequence for the revocation. *Id.* at 757. Trial courts are not required to hold an additional hearing to determine the proper consequence for a revocation. *Id.* However, "[s]imply recognizing that sufficient evidence exist[s] to find that a violation occurred does not satisfy [the two-step consideration]." *Id.* at 758. Moreover, "consideration of past criminal history is only appropriate in the second part of the two-step analysis." *Id.* at 759, n.5 (citing *State v. Kennedy Fleming,* No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018) (trial court may consider a defendant's past criminal history to determine, based on a totality of the circumstances, the defendant's amenability to continued probation)).

Here, Defendant does not dispute the trial court's finding that he violated his probation. Indeed, Defendant admitted that he had violated the conditions of his release as alleged in the violation of probation warrant and amended warrant and his admission alone constitutes substantial evidence to support revocation. *See State v. Ross Pruitt*, No. E2015-01494-CCA-R3-CD, 2016 WL 3342356, at *4 (Tenn. Crim. App. June 8, 2016) ("[t]he Defendant's admission that he violated the terms of his probation, alone constitutes substantial evidence to support the revocation"); *State v. Daniel Earl Gentry,* No. E2018-01010-CCA-R3-CD, 2019 WL 1224637, at *2 (Tenn. Crim. App. Mar. 15, 2016) ("the defendant stipulated to violating the terms of his probation, establishing an adequate basis for the trial court's revocation of his probation"). Based on Defendant's concession, we find no abuse of discretion in step one of the trial court's analysis.

Although the Supreme Court released *Dagnan* after the parties in this case had filed their briefs, Defendant contends the trial court committed reversible error by failing to consider his conditional acceptance into the DRC program and the principles of sentencing in determining the consequence of the revocation. *See, e.g.,* T.C.A. § 40-35-103(1). He argues that "there is a presumption for an alternative sentence" given his conditional acceptance into the DRC program. He also argues that confinement is not necessary because he lacks a long history of criminal conduct, the seriousness of his convicted drug

offense was not shocking, and he has not "displayed a pattern of criminal conduct which would warrant protection of society by confinement."

As the State notes, the principles of sentencing for determining confinement and an initial request for probation under Tennessee Code Annotated section 40-35-103(1) are not relevant to our analysis of the trial court's probation revocation decision. "Because the trial court's authority is limited by the nature of the proceedings, it follows that the trial court is not obligated to consider the sentencing statute in a probation revocation hearing." *State v. Steven Thacker*, No. M2011-01061-CCA-R3-CD, 2012 WL 1072005, at *3 (Tenn. Crim. App. Mar. 28, 2012); *see also State v. Norman B. Thompson*, No. E2000-01017-CCA-R3PC, 2001 WL 298633, at *3 (Tenn. Crim. App. Mar. 28, 2001) ("the trial court is not required to reconsider the principles of sentencing in a probation revocation"). Therefore, Defendant's reliance on authority relevant to the *denial* of probation is misplaced regarding the *revocation* of probation. Once the trial court found that Defendant had violated his probation, the trial court was under no duty to presume that Defendant should be reinstated to probation or some other alternative sentence. *See, e.g.,* T.C.A. §§ 40-35-308, -310, 311.

Turning our attention to the trial court's reasoning for ordering incarceration as a consequence of revocation, we find no abuse of discretion. At the conclusion of the second hearing, the trial court chronicled Defendant's history from the original sentencing which included a prior revocation of probation. The trial court first found that Defendant violated his probation based on his submission to the violations under oath at the first hearing. Although the trial court's reasoning for the second consideration is rather brief, the record reflects a separate discretionary decision by the trial court for imposing incarceration. The record shows that the trial court scheduled a separate hearing to give time for Defendant to be qualified for the DRC program and to consider the consequence of the revocation. To that end, the trial court gave Defendant fifty-six days to fully qualify for the DRC program. Defendant complains the trial court failed to consider his conditional acceptance into the DRC program. However, Defendant was given additional time to be fully accepted into the DRC program. There is no evidence in the record that Defendant took the necessary steps to be fully accepted into the program to avoid incarceration.

Furthermore, the trial court emphasized the seriousness of the aggravated domestic assault charge in ordering Defendant to serve his sentence in incarceration. *See Fleming,* 2018 WL 6787580, at *3 (no abuse of discretion in ordering confinement as a consequence of probation revocation where defendant was arrested for the aggravated domestic assault of his girlfriend and was accused of "choking" the victim causing her to nearly lose

consciousness).[3] This court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Dannie Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); *see also State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). Because Defendant has not overcome the presumption that the trial court's decision was reasonable, he is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JILL BARTEE AYERS, JUDGE

---

[3] Although it was not the basis for the trial court's reasoning, we are aware that under newly amended Tennessee Code Annotated section 40-35-311, the trial court may commence execution of the original judgment if the court finds by a preponderance of the evidence that the defendant violated his probation by committing a new felony. *See* T.C.A. § 40-35-311(e)(2) (2021). Domestic aggravated assault is a Class C felony. *See, e.g.,* T.C.A. § 39-13-102(e)(1)(A).